**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | | |
|---|---|---|
| PERSONALIZED MEDIA COMMUNICATIONS, LLC | § § § | |
| v. | § | Case No. 2:12-CV-68-JRG-RSP |
| ZYNGA INC. | § § § | |

## DEFENDANT ZYNGA INC.'S BRIEF IN OPPOSITION TO ADMITTING THE OCEAN TOMO® INVENTOR STUDY

PMC seeks to introduce the Ocean Tomo® 2010 Patent Quality Inventor Study[1] (the "Study") as allegedly demonstrating "the strength of Harvey's patents" and the "significance of his work," as well as the "relevance of the inventions at issue in this case." PMC Br. at 3. PMC contends that the document is relevant to damages and secondary considerations. But the Study is inadmissible hearsay, and it fails to satisfy the "Market Reports" exception of FED. R. EVID. 803(17). Indeed, Ocean Tomo® itself warns that the Study "***should not be relied upon***" in connection with the type of infringement, validity, and damages issues presented in this case, and thus the Study lacks the requisite indicia of reliability to satisfy the "Market Reports" exception. *See* Ratings, http://www.oceantomo.com/ratings/standard-reports/otr (last visited Nov. 5, 2013) (emphasis added) (attached as Exhibit A).

Moreover, admitting the document into evidence would be permitting Ocean Tomo® (and its apparent analysis of the purported strength of PMC's patents and PMC's inventors) to act as a previously undisclosed, out-of-court "expert" in this case. Accordingly, Ocean Tomo®'s expert opinion in the Study is inadmissible hearsay. In addition, unlike the other experts in this case, Ocean Tomo® will not testify, and Zynga cannot cross examine the Study. Thus, the Court should reject PMC's attempt to introduce Ocean Tomo®'s "expert" opinion hearsay through the backdoor.

Furthermore, the Study says nothing about the "relevance of the inventions at issue in this case" because the study was based on 16 of Mr. Harvey's patents, 14 of which are not at issue in this matter. Even if the Study has some probative value as to the "strength" of Mr. Harvey's patents—and it does not, as recognized by Ocean Tomo®—the Study lacks a sufficient nexus to the patents-in-suit (much less to the particular claims-in-suit) to be of value to the jury.

---

[1] PX 135 [PMCZ01021523 – 01021529].

Because Ocean Tomo® itself disclaims the use of the Study to assess validity and damages (PMC's intended use here), any probative value of the document is substantially outweighed by the prejudice that would result if the jury were permitted to consider the Study. Therefore, the Study should be excluded under FED. R. EVID. 403.

## I. The Study is Inadmissible Hearsay.

PMC intends to offer the Study to prove the strength and significance of PMC's patents as reflected by Ocean Tomo®'s Study. *See* PMC Br. at 3. Presumably, PMC intends to show the jury that PMC's inventor was the top inventor in the wireless industry and further that "his patents [were] in the top 0.1% of the approximate 220,000 active US utility patents granted in 2010." PX 135 at 1 (attached as Exhibit B). That is clearly hearsay.

Moreover, Ocean Tomo®'s analysis of the strength of PMC's patents and Mr. Harvey as an inventor is expert opinion, and PMC seeks to offer this opinion to prove the "strength" of PMC's patent portfolio and that PMC's patents have been recognized in the industry. PMC Br. at 1, 9. But, unlike the other experts in this case, Ocean Tomo® will not testify, and Zynga cannot cross examine the Study. The Court should reject PMC's attempt to introduce Ocean Tomo®'s "expert" opinion.

PMC contends that the Study is a "commercial publication" with sufficient indicia of reliability to qualify for the "Market Reports" hearsay exception in FED. R. EVID. 803(17). PMC states that there are three characteristics that generally qualify a document for this exception: "(1) it is circulated for others to use; (2) the public or persons in a particular occupation or industry rely on it; and (3) it pertains to objective facts." PMC Br. at 7. The Study does not satisfy the second or third element of this test.

In fact, regarding the second prong, Ocean Tomo®, the author of the Study, explicitly concedes that its patent quality metric "***should not be relied upon*** to prove or establish the existence or probability" of "'fair market value,' royalty rates, validity, enforceability or infringement." Ratings, http://www.oceantomo.com/ratings/standard-reports/otr (last visited Nov. 5, 2013) (attached as Exhibit A) (emphasis added). The Study, therefore, lacks the indicia of reliability necessary for admission under Rule 803(17). Moreover, the fact that Ocean Tomo® warns that its ratings "should not be relied upon" as evidence of validity, infringement, enforceability, or value further undermines PMC's assertion that the Study pertains to objective facts relevant to the issues of damages and validity. In addition, PMC has failed to put forth any evidence that the public or other persons in the relevant occupation have relied on this particular Study.

Regarding the third prong, PMC argues that the Study relates to objective facts because Ocean Tomo® claims to "objectively rate patent assets based on a proven [and patented] methodology." PMC Br. at 7. Ocean Tomo®'s ratings purport to be based on analysis of 50 independent factors that Ocean Tomo® ***subjectively*** believes correlate to patent value. *See* Study at 3. The data underlying the 50 factors that Ocean Tomo® subjectively chose to generate its IPQ scores may be objective, but the final scores themselves (and certainly Mr. Harvey's designation as a "top rated inventor") are more fairly characterized as subjective or "evaluative" in nature, similar to an "expert" opinion. These kinds of evaluative reports go "well beyond objective facts" and lack the necessary indicia of "trustworthiness" for admissibility under Rule 803(17). *See* Charles Alan Wright et al., 30C Fed. Prac. & Proc. Evid. § 7058 (2d ed.) (stating that "automatic inclusion in Rule 803(17) of such evaluative reports is unwarranted").

The authority cited by PMC in support of the Report's admissibility is inapposite. In *Global Computer Enterprises, Inc. v. United States*, 88 Fed. Cl. 52 (2009), the Court of Federal Claims admitted the request for proposal (RFP) summaries under Rule 803(17) because the court was convinced "that the materials . . . provided from the Input.com website are reliable . . ." *Id.* at 71. As discussed *supra*, the Study at issue here is not a reliable measure of anything relevant to this case—infringement, validity, or damages. And the Study's author concedes as much.

The present situation is akin to the one addressed by the Delaware Supreme Court in *Jianniney v. State*, 962 A.2d 229 (Del. 2008). In *Jianniney*, the court held that Mapquest printouts were inadmissible to show the truth of the website's driving time estimates. *Id.* at 232. The court held that the "Market Reports" exception did not apply to the printouts because "the State offered nothing to demonstrate the reliability or general acceptance and use of those [driving time] estimates." *Id.* at 230. As evidence of the printouts' lack of reliability, the *Jianniney* court noted that "Mapquest expressly disclaims the accuracy of its information." *Id.* at 232.

Like in *Jianniney*, here Ocean Tomo® disclaims the accuracy of its information, stating that its IPQ scores "***should not be relied upon*** to prove or establish the existence or probability" of "'fair market value,' royalty rates, validity, enforceability or infringement." Ratings, http://www.oceantomo.com/ratings/standard-reports/otr (last visited Nov. 5, 2013) (emphasis added).

PMC also argues that the Study is not hearsay at all. In particular, PMC argues that the Study's relevance is not limited to proving the quality of PMC's patents (the truth of the matter asserted) because, even if the Study is inaccurate, "it still shows that Harvey's patents have recognition in the IP industry . . ." PMC Br. at 9. But PMC's reasoning is circular. PMC seeks

4

to offer the Study as evidence that the IP industry has recognized Mr. Harvey's patents, but that "recognition" is predicated on Ocean Tomo®'s opinion regarding the strength of Mr. Harvey's portfolio—the truth of the matter asserted. Regardless of how PMC characterizes the Study and its supposed import, it is inescapable that the Study goes to the truth of the matter asserted. It is inadmissible hearsay.

In any event, the Study is not probative of the purported non-hearsay purpose suggested by PMC—industry recognition. Specifically, the Study is not probative of industry recognition of the specific patents-in-suit, much less the particular claims-in-suit. Fourteen of the 16 patents in the Study—88%—are not at issue in this case. The jury will be asked to decide whether the particular asserted claims of the three patents-in-suit are valid and infringed. The jury will not, or should not, pass on the "strength of PMC's patent portfolio." For the reasons already discussed, the Study would lack any real probative value, even if all 16 of Mr. Harvey's 2010 patents were at issue. But because the Study is based primarily on patents that PMC does not assert in this case, the Study's probative value is diminished even further. For example, according to the Study, Mr. Harvey's "top rated patent" is U.S. Patent No. 7,747,217, which is not asserted in this case. Study at 1. It follows that the asserted patents are weaker, even under the rating system preferred by PMC.

The Federal Circuit rejects secondary considerations evidence where, as here, there is an inadequate link between the proffered evidence and the particular claims at hand. For example, in *In re Gardner*, 449 F. App'x 914, 917-18 (Fed. Cir. 2011) (non-precedential), evidence that "earlier-issued patents" had "been cited by a considerable number of later patents" was insufficient to overcome an obviousness rejection. The *Gardner* court stated that "evidence of secondary considerations must be relevant to the subject matter as claimed," and there was no

evidence linking the patentee's prior patents with claims at issue. *Id.* So it is here. The Study, based in large part on 14 unasserted PMC patents, lacks a sufficient nexus "to the subject matter as claimed" to aid the jury's understanding of any issue in this case.

> II. **Ocean Tomo® Warns Against the Use of This Study to Prove Validity and Damages, and Thus Any Probative Value is Greatly Outweighed by the Prejudice of Misleading the Jury.**

PMC contends that the Study is probative of "the strength of Harvey's patents, the significance of his work, and the relevance of the inventions at issue in this case." PMC Br. at 3. PMC states that this information is relevant to damages because "the commercial success of the patents is relevant to assessing an appropriate royalty rate." PMC Br. at 10. PMC also told the Court that the Study is relevant to the secondary consideration of non-obviousness. But by Ocean Tomo®'s own admission, the IPQ scores on which the Study is based are not relevant to any issue in this case—including validity, infringement, and damages—and "should not be relied upon to prove or establish the existence or probability of such facts":

> No direct statistical correlation has been established between IPQ scores and "fair market value," <u>royalty rates</u>, <u>validity</u>, enforceability or <u>infringement</u> and <u>IPQ scores should not be relied upon to prove or establish the existence or probability of such facts</u>.

Ratings, http://www.oceantomo.com/ratings/standard-reports/otr (last visited Nov. 5, 2013) (emphasis added). Thus, Ocean Tomo® itself disclaims the very use of the Study that PMC proposes this Court accept, and therefore any probative value of the study is highly outweighed by the prejudice that would result if the jury were permitted to consider the Study.

In addition, if PMC is permitted to discuss the Study with the jury, PMC would undoubtedly trumpet Ocean Tomo® as a leader in evaluating patent quality, a company relied upon by "[m]ajor global corporations." PMC Br. at 2. Upon learning that such a company named Mr. Harvey the "top rated inventor" in "Wireless" technology for 2010, the jurors may

improperly defer to Ocean Tomo®'s evaluation of Mr. Harvey's patents instead of evaluating the evidence for themselves. Indeed, there is a significant risk that the jury would assume—improperly—that Mr. Harvey's patents must be valid, and that Zynga should pay substantial damages to compensate PMC's "top rated inventor." Zynga notes that a similar concern led this Court to exclude evidence of the *inter partes* reviews of the patents-in-suit. Thus, the Study should be excluded under FED. R. EVID. 403 because the danger of unfair prejudice and misleading the jury greatly outweighs the Study's probative value.

### III. Conclusion

For the aforementioned reasons, Zynga respectfully requests that the Court exclude Plaintiff's proffered exhibit number PX 135, the Ocean Tomo® 2010 Patent Quality Inventor Study.

Dated: November 6, 2013         Respectfully submitted,

*/s/ Steven M. Zager*
Steven M. Zager (Lead Attorney)
Texas State Bar No. 22241500
szager@akingump.com
Akin Gump Strauss Hauer & Feld LLP
One Bryant Park
New York, New York 10036
Telephone: 212.872.1000
Facsimile: 212.872.1002

Fred I. Williams
Texas State Bar No. 00794855
fwilliams@akingump.com
Akin Gump Strauss Hauer & Feld LLP
300 West Sixth Street, Suite 1900
Austin, Texas 78701
Telephone: (512) 499-6200
Facsimile: (512) 499-6290

Todd Eric Landis
Texas State Bar No. 24030226
tlandis@akingump.com
Akin Gump Strauss Hauer & Feld LLP
1700 Pacific Avenue, Suite 4100
Dallas, Texas 75201
Telephone: 214.969.2743
Facsimile: 214.969.4343

Greg L. Lippetz
California State Bar No. 154228
glippetz@jonesday.com
Jones Day
1755 Embarcadero Road
Palo Alto, CA 94303
Telephone: (650) 739-3939
Facsimile: (650) 739-3900

Krista S. Schwartz
Illinois Bar No. 6238053
ksschwartz@jonesday.com
Jones Day
77 W. Wacker Drive
Suite 3500
Chicago, IL 60601

Telephone: (312) 782-3939
Facsimile: (312) 782-8585

Melissa R. Smith
Texas State Bar No. 24001351
Melissa@gillamsmithlaw.com
Gillam & Smith
303 S. Washington Avenue
Marshall, TX 75670
Telephone:  (903) 934-8450
Facsimile:   (903) 934-9257

**ATTORNEYS FOR DEFENDANT ZYNGA INC.**

## **CERTIFICATE OF SERVICE**

     The undersigned hereby certifies that all counsel of record who are deemed to have consented to electronic service are being served this 6th day of November, 2013, with a copy of this document via the Court's CM/ECF system pursuant to Local Rule CV-5(a)(3).

                                          */s/ Steven M. Zager*
                                          Steven M. Zager