```
 1          IN THE UNITED STATES DISTRICT COURT
          FOR THE EASTERN DISTRICT OF TEXAS
 2                  MARSHALL DIVISION

 3  PERSONALIZED MEDIA          *    Civil Docket No.
    COMMUNICATIONS              *    2:12-CV-68
 4                              *
    VS.                         *    Marshall, Texas
 5                              *
                                *    November 15, 2013
 6  ZYNGA, INC.                 *    8:00 A.M.

 7              TRANSCRIPT OF JURY TRIAL
        BEFORE THE HONORABLE JUDGE RODNEY GILSTRAP
 8              UNITED STATES DISTRICT JUDGE

 9

10  APPEARANCES:

11  FOR THE PLAINTIFF:          MR. BRETT GOVETT
                                Fulbright & Jaworski
12                              2200 Ross Avenue, Suite 2800
                                Dallas, TX    75201
13
                                MR. ROBERT HARRELL
14                              MR. ERIC HALL
                                MR. JON RICE
15                              MS. ANDREA FAIR
                                Fulbright & Jaworski
16                              1301 Mckinney, Suite 5100
                                Houston, TX    77010
17
                                MR. T. JOHN WARD
18                              MR. WESLEY HILL
                                Ward & Smith
19                              1127 Judson Road, Suite 220
                                Longview, TX    75606
20
    APPEARANCES CONTINUED ON NEXT PAGE:
21

22  COURT REPORTERS:            MS. SHELLY HOLMES, CSR
                                MS. SUSAN SIMMONS, CSR
23                              Official Court Reporters
                                100 East Houston, Suite 125
24                              Marshall, TX    75670
                                903/935-3868
25  (Proceedings recorded by mechanical stenography,
    transcript produced on CAT system.)
```

APPEARANCES CONTINUED:

FOR THE DEFENDANT:       MR. STEVEN ZAGER
                         Akin Gump Strauss Hauer & Feld
                         One Bryant Park
                         New York, NY    10036

                         MR. TODD LANDIS
                         Akin Gump Strauss Hauer & Feld
                         1700 Pacific Ave., Suite 4100
                         Dallas, TX    75201

                         MS. MELISSA SMITH
                         Gillam and Smith
                         303 South Washington Avenue
                         Marshall, TX    75670


           *************************************


                   P R O C E E D I N G S

           (Jury out.)

           COURT SECURITY OFFICER:  All rise.

           THE COURT:  Be seated, please.

           Is the Plaintiff ready to read into the

record any additional exhibits from the list of

pre-admitted exhibits that were used before the jury

during yesterday's portion of the trial?

           MR. HILL:  Yes, Your Honor.

           THE COURT:  Proceed.

           MR. HILL:  Your Honor, I believe we only

have two to add to the list from what had been offered

 1 previously in the trial.  It's Plaintiff's Exhibit 455

 2 and then Defendant's Exhibit 356.  And we have a -- I

 3 think both sides have exchanged and we'll have a

 4 complete list, if the Court would like hard copies of

 5 the final lists.

 6             THE COURT:  I'm sure Ms. Lockhart will be

 7 after you to get that.

 8             MR. HILL:  Thank you, Your Honor.

 9             THE COURT:  Any objection to the

10 Plaintiff's rendition from the Defendants?

11             MS. JOHNSON:  No, Your Honor.

12             THE COURT:  All right.  Does Defendant

13 have their list of additional exhibits to read into the

14 record?

15             MS. JOHNSON:  Yes, Your Honor.  Kellie

16 Johnson from Akin.

17             We wish to admit Plaintiff's Exhibit 34,

18 Defendant's Exhibit 28, Defendant's Exhibit 166,

19 Defendant's Exhibit 356, Defendant's Exhibit 678,

20 Defendant's Exhibit 1052, and Defendant's Exhibit 10 --

21 1087.

22             THE COURT:  All right.  Any objection to

23 that list from the Plaintiff?

24             MR. HILL:  No, Your Honor.

25             THE COURT:  All right.  Those exhibits

1  are duly noted as a part of the record in this case.

2              Also, Counsel, I'm informed that the

3  parties have an agreement among themselves that deviates

4  from the usual pretrial order on exchanging slides prior

5  to closing.  If that's the case, let me hear from

6  counsel on that.

7              MR. ZAGER:  Your Honor, Steve Zager for

8  Zynga.

9              We inquired as to whether the Court would

10 be willing to vary its normal procedure if the parties

11 were in agreement, and I think the parties may have an

12 agreement that they do not wish to exchange slides in

13 advance of the closing if that's all right with the

14 Court.

15             THE COURT:  What's the Plaintiff's

16 position on that?

17             MR. HILL:  We're in agreement, Your

18 Honor.

19             THE COURT:  Well, I once heard a wise

20 judge say we're in the business of settling disputes and

21 not settling agreements, so that will be -- that will be

22 acceptable.

23             MR. ZAGER:  Thank you, Your Honor.

24             THE COURT:  All right.  At this time,

25 I'll hear motions under Rule 50(a) for judgment as a

1  matter of law.

2  Mr. Zynga, if you'd like to go -- Zager,

3  if you'd like to go first.  Excuse me.  You are kind of

4  Mr. Zynga after all we've heard.

5  MR. ZAGER:  I kind of like that, Your

6  Honor.  It's rare that I hear a name that follows mine

7  in alphabetical order, so...

8  THE COURT:  When you're ready.

9  MR. ZAGER:  Thank you.

10  May it please the Court.  Steve Zager for

11  Zynga.

12  Zynga asks this Court to enter judgment

13  as a matter of law of non-infringement for all of the

14  asserted claims under Federal Rule of Civil

15  Procedure 50(a).

16  I want to start with no evidence of

17  direct infringement.  PMC has failed to introduce

18  evidence sufficient for a reasonable jury to find that

19  any of the asserted claims are directly infringed.

20  First, with respect to Claims 1, 4, and 7

21  of the '717 patent, PMC has failed to show that Zynga's

22  games perform the step of generating a benefit datum at

23  a player's device as required by independent Claim 1.

24  At best, PMC provided evidence that the

25  benefit datum is displayed on the user's device.

1                    Displayed on the user's device is not the

2   same thing as generated on the user's device.

3                    And displaying the benefit datum is

4   actually covered by delivering that step of the claim

5   and not in the step we were talking about.

6                    So because Claim 1 is not directly

7   infringed, dependent Claims 4 and 7 are also not

8   infringed.

9                    Second, with respect to Claims 1, 3, and

10  6 of the '638 patent, PMC has failed to show that

11  Zynga's games perform the steps of the claims relating

12  to second data and second subscriber station.

13                   In particular, PMC has failed to show

14  that the things it's calling second data are, number

15  one, computed at the user's device; two, displayed on

16  the user's device; and three, transferred to Zynga's

17  servers as required by Claims 1 and 6.

18                   The evidence from Zynga's fact witnesses

19  conclusively prove that Zynga's games do not work the

20  way that PMC has alleged, and there has been no evidence

21  to the contrary beyond opinion testimony.

22                   Because Claim 1 is not directly

23  infringed, dependent Claim 3 is not infringed.

24                   Third, PMC completely failed to show that

25  Zynga's servers meet the transmission station element of

1  Claim 6 of the '638 patent.

2          Now, according to the claim, the

3  transmission station must have a programmable

4  controller.  PMC's expert provided no evidence that

5  Zynga's servers include a programmable controller.

6  Moving now to indirect infringement.

7          PMC has also failed to introduce evidence

8  sufficient for a reasonable jury to find that Zynga

9  indirectly infringed any of the asserted claims.

10          First, as the Court is well aware, there

11  can be no indirect infringement because there is no

12  direct infringement.

13          But second, and very importantly, there

14  is no evidence that Zynga had the requisite knowledge

15  and intent to directly infringe -- to indirectly

16  infringe.  I'm sorry, Your Honor.

17          Both induced infringement and

18  contributory infringement require knowledge of the

19  patent and knowledge of the acts that constitute patent

20  infringement.  Knowledge of the patent and knowledge of

21  the acts that constitute patent infringement.  And

22  that's the Global Tech case in 2011.

23          Here's the thing in this case:  There is

24  no evidence that Zynga had the requisite knowledge for

25  indirect infringement.  It is undisputed that Zynga had

1 no presuit intent because Zynga didn't know about the

2 asserted patents until Zynga was sued.

3          With respect to post-suit conduct, PMC

4 did not put on any evidence at all that Zynga had the

5 requisite intent.

6          Dr. Claypool testified only that Zynga

7 encouraged people to play its games.  Zynga's witnesses

8 testified only that they encouraged people to play the

9 games.  But no one put on any evidence at all that Zynga

10 knew that playing the accused games constituted

11 infringement of the PMC patents.

12          This is insufficient as a matter of law

13 pursuant to the Supreme Court's 2011 opinion in Global

14 Tech.

15          Now to contributory infringement.

16          PMC's failed to show that Zynga sells or

17 offers to sell a product, as required, to prove

18 contributory infringement.

19          Under Federal Circuit law providing a

20 service that assists another in committing patent

21 infringement is not contributory infringement.

22          The Pharmastem Therapeutics case from the

23 Federal Circuit in 2007:  Providing a service may

24 constitute induced infringement if all of the inducement

25 requirements are met, but it cannot constitute

contributory infringement because the contributory

infringement statute requires sale or offer for sale.

PMC has introduced no evidence that Zynga

sells or offers to sell its gaming software to anyone.

So PMC's contributory infringement fails as a matter of

law.

While Zynga provides the games, as

Dr. Claypool testified, providing the games is not the

same as selling the software.  And that's an important

distinction when it comes to whether or not PMC's

contributory infringement claim should be resolved by

this Court as a matter of law.

In conclusion, with respect to

infringement, Zynga requests that the Court enter

judgment as a matter of law of non-infringement as to

all the asserted claims; Claims 1, 4, 7 of the '717

patent; Claims 1, 3, and 6 of the '638 patent.

Turning now to damages, two points there.

Defendant also moves for judgment that the Plaintiff's

damages claim is improper as a matter of law and that

the Plaintiff has presented insufficient evidence of an

admissible damages theory.

I want to start with the scant comment we

heard about a running royalty.  All we heard was that

PMC wants a running royalty.  There is no evidence in

1  this record to support a running royalty at all.

2          And consequently, we believe the evidence

3  that appears in the record is indeed all to the

4  contrary.  Mr. Holtzman testified that PMC agrees to

5  lump-sum royalties 99 times out of a hundred.  All of

6  Zynga's past licenses were all lump sum.  There's just

7  nothing in this record to talk about a running royalty

8  at all, only a lump-sum royalty.

9          And second, PMC has failed to present the

10  necessary evidence of apportionment required to assess

11  the damages correctly in this case.

12          We have some other arguments about

13  damages, and I'm going to reserve those for the briefing

14  that we're going to file on Monday.

15          In addition, the briefing we'll file on

16  Monday will flesh out the arguments I've made here as I

17  stand before you today and provide more of the case law

18  support and citations to the record.

19          But we think these issues are important,

20  and I highlighted the important ones for you today, and

21  we believe that we are entitled to judgment as a matter

22  of law on those issues I've discussed this morning.

23          Thank you, Your Honor.

24          THE COURT:  Mr. Zager -- Zager, certainly

25  you have leave of the Court to file a written rendition

1    of this motion for judgment as a matter of law, and I

2    have no problem with that being filed either over the

3    weekend or on Monday, given that we will not charge the

4    jury and instruct them to retire to deliberate until

5    Monday afternoon.

6              However, if you're moving for judgment

7    pre-verdict as a matter of law, I can't very well

8    consider anything separate that you're going to file in

9    your written version that you're not presenting to me

10   orally this morning, because the jury's going to be

11   retiring to deliberate before I'll probably see your

12   written version.

13             So if you want me to consider it for Rule

14   50(a) purposes, I need to hear it.  If you want to

15   retain it for later submission post-verdict, that's your

16   choice.  But I don't want you to be under the

17   misunderstanding that you might be entitled to

18   consideration by the Court on some different theory that

19   you're not presenting to me now on a post -- on a

20   pre-verdict basis.

21             MR. ZAGER:  With that understanding, with

22   leave of the Court, I would amend my comments for you

23   this morning and talk about some other theories on the

24   damages aspects of the case --

25             THE COURT:  Okay.

 1              MR. ZAGER:  -- that we would like the

 2   Court to consider.  I think I've covered all of the

 3   bases for JMOL on the infringement case, and I think all

 4   we would do in written papers is provide the Court with

 5   more case authority.

 6              THE COURT:  That's what I'm anticipating.

 7   I want to hear everything, but if you want to augment

 8   the arguments you present today in written version

 9   later, that's not a problem.

10              MR. ZAGER:  Terrific.  I will turn now,

11   then, to Dr. Becker's royalty rate.

12              Dr. Becker's royalty rate of 2 percent is

13   not supported by the evidence.  PMC's own documents

14   demonstrate a much lower royalty rate offered in a

15   hypothetical negotiation.  Dr. Becker used a starting

16   point of 4 percent, which he dropped to 2 percent,

17   calculating a hypothetical license for two patents.

18              But PMC's own documents in the case show

19   potential ranges from only .25 percent to .5 percent in

20   offers and projections.  Indeed, for the Sony license,

21   PMC uses the starting point of .35 percent, totaling 181

22   million, but ended up licensing its entire portfolio to

23   Sony for only 26 million, a fraction of that.

24              So there's simply no evidence PMC would

25   have offered and Zynga would have accepted a 2-percent

1   royalty rate.

2                  Second, Dr. Becker's reliance on the

3   Overture license was inappropriate as a matter of law as

4   the agreement was not comparable.  The Overture license

5   related to search engines, not online gaming.

6                  Dr. Becker uses these licenses in search

7   engine cases.

8                  Mr. Holtzman testified that PMC and its

9   licensees have never used the Overture patents.  In

10  addition, PMC inappropriately offered evidence of the

11  amounts and details of licenses that were deemed not

12  comparable by both experts.  Mr. Holtzman took the stand

13  and discussed the amounts and terms that Cisco,

14  Motorola, and DirecTV paid to PMC to imply legitimacy to

15  the company in its patents.

16                 However, PMC's own damages expert

17  determined that those agreements were irrelevant to a

18  damage analysis.

19                 Finally, Dr. Becker admitted that he had

20  only excluded non-infringing revenues, meaning all that

21  was left was 100 percent of allegedly infringing

22  revenues.  Dr. Becker excluded gift cards, because they

23  were outside the game architecture.  Dr. Becker excluded

24  ad revenues with no direct connection to infringement.

25                 Dr. Becker, Dr. Claypool, and

1   Mr. Holtzman all admitted that other features of Zynga's

2   games have contributed to Zynga's success.  To use 100

3   percent of the revenues, Dr. Becker had to demonstrate

4   that the patented features drove consumer demand, but

5   admitted that he conducted no studies, no surveys, had

6   no evidence whatsoever to measure consumer demand for

7   the allegedly infringing features.

8              And with that, Your Honor, I believe that

9   I've hit upon every issue that we intend to raise with

10  the Court as a basis for a judgment as a matter of law.

11             THE COURT:  All right.  Thank you,

12  Mr. Zager.

13             Response from the Plaintiff, please.

14             MR. HALL:  Your Honor, Eric Hall for PMC.

15             THE COURT:  Proceed.

16             MR. HALL:  And I'll be responding with

17  regard to direct infringement.

18             To prove direct infringement, the

19  Plaintiff must show the presence of every element in the

20  accused devices or processes.  Determining infringement

21  is a two-step process.  First, the claim must be

22  properly construed, and secondly, the claim as construed

23  must then be compared to the accused device or process.

24             A determination of infringement is a

25  question of fact that's reviewed for substantial

 1  evidence and tried to a jury.

 2  A reasonable jury would have a legally

 3  sufficient evidentiary basis to find for PMC on the

 4  issue of direct infringement as to each asserted claim

 5  as applied to each accused game, both direct

 6  infringement by the players of Zynga's games and by

 7  Zynga itself.

 8  PMC has substantial evidence by the

 9  players of Zynga's games as well as by Zynga itself

10  through testing.  Dr. Claypool testified discussing

11  testimony by Zynga that testing is of the utmost

12  importance and that Zynga tests every new game and every

13  new feature.

14  And Zynga's employee, Ben Hall, agreed,

15  saying he would be shocked if any game was ever released

16  without having ever -- every aspect of it tested.

17  Mr. Carroll then testified that more than

18  half of their testing occurs in the United States.

19  Dr. Claypool presented substantial

20  evidence showing how game play infringes the accused

21  games.  And Mr. Bakewell, Zynga's own expert, agreed

22  that Zynga has a hundred million monthly, average,

23  people playing those games.

24  Now, Dr. Claypool considered a number of

25  games indepth during his nearly four hours of testimony.

1 CityVille, for '638, Claims 1 and 3, going through each

2 and every element; Words with Friends, '638, Claim 1,

3 again, going through each and every element; FarmVille

4 for '638, Claim 6, each and every element; CastleVille

5 for '717, Claims 1, 4, and 7; and Zynga Poker '717,

6 Claims 1, 4, and 7; again, each and every element for

7 both of those games.

8              Dr. Claypool demonstrated infringing game

9 play.  He discussed the testimony of Zynga corporate

10 representatives.  He showed Zynga documents.  He showed

11 multiple screenshots taken of Zynga games and he showed

12 and discussed Zynga's source code.

13              And with regard to each step of each of

14 those games, he presented such evidence.

15              For the other accused games, Dr. Claypool

16 explained that he performed the same analysis, and he

17 explained for each claim and each element how those

18 other games infringed the claims in the same way as the

19 games he had covered earlier.

20              Dr. Claypool testified he considered the

21 same evidence for each game.  His personal playing of

22 the games, Zynga's source code, Zynga's documents,

23 Zynga's deposition testimony.

24              Zynga did not point out any differences

25 in those games but, in fact, turned the argument around.

1            With Dr. Schaefer repeatedly saying if

2   one game did not infringe, then the others did not

3   infringe either.  And that would be true only if the

4   games operated in the same way for the accused features.

5            And, in fact, Ben Hall testified to

6   effect, another Zynga witness, saying that the 'Ville

7   Browser games operate with a common code base, and

8   Dr. Schaefer agreed.

9            Question to Dr. Schaefer:  Now, when on

10  the stand, Dr. Claypool said that the other 'Ville games

11  operated in a similar manner when it came to the

12  placement of objects in the game.  Do you recall that?

13            ANSWER:  Yes, I do.

14            QUESTION:  Do you agree with that?

15            ANSWER:  They have similar functions to

16  determine where their object can be placed.  Yes, he

17  said.

18            Zynga did not argue that the accused

19  games did not function in the manner that Dr. Claypool

20  discussed in his summary slides, but instead Zynga

21  argued only that the accused functionality described in

22  the summary charts does not infringe.

23            Dr. Claypool was asked:  And have you

24  analyzed these additional games in the same way that you

25  did FarmVille?

```
 1                    He said:  Yes.  I did the exact type of

 2  analysis.

 3                    You looked at the source code?

 4                    Dr. Claypool said yes.

 5                    And have you played these games?

 6                    He said:  Yes, I played all of these

 7  games.

 8                    Have you looked at Zynga's documents?

 9                    Dr. Claypool said:  Yes.  I've looked at

10  numerous Zynga documents.

11                    And you've read testimony by Zynga

12  employees?

13                    Dr. Claypool said:  Yes, I have.

14                    Now, turning to the particular items that

15  Mr. Zager mentioned.  With regard to '717, Claim 1,

16  generating a benefit datum at the player's device, the

17  confusion that -- on Zynga's part here is that the offer

18  is not the same as the screen.

19                    And Dr. Claypool repeatedly referred to

20  the offer as what is generated.  It includes the -- the

21  screen in the sense that that's a display of the offer,

22  but it's the offer that's the benefit datum.

23                    And as Mr. Zager correctly pointed out,

24  the generating occurs before the delivering.  So there's

25  something happening before the display.  And
```

1  Dr. Claypool repeatedly referred to it as the offer.

2              And, in fact, for the summary chart, he

3  talked about the offer for the item as needed.  And as

4  with something that happens at the player's device,

5  Dr. Claypool explained that it's that as needed that

6  that offer is not going to be generated, if it's not

7  needed.

8              And so that's something that's happening

9  as the player is playing the game, and that's what

10 Dr. Claypool explained throughout his testimony for each

11 of the games.

12             For the second item that was mentioned,

13 the second data, again, Dr. Claypool went through each

14 game and his -- and showed that second data includes

15 that valid chosen move, whether it's circled by a green

16 square as in the 'Ville games or it's indicated by the

17 placement of the tiles in Words with Friends or it's

18 indicated by the bet in the Poker game.

19             It's the valid chosen move, and that

20 valid chosen move is computed, it is displayed, and it

21 is transferred.  And Dr. Claypool showed that in video

22 games played to the jury, and he showed that by looking

23 at source code when explaining that to the jury.

24             And the third item that was mentioned was

25 the programmable controller for the transmission

1  station.  And, again, Dr. Claypool testified with regard

2  to the FarmVille game, and then for each game, he also

3  referred to that element that it was present in the

4  server.  And he testified that that element was

5  satisfied by the game.

6              So there is sufficient substantial

7  evidence for each of the claim elements that

8  Dr. Claypool presented in his hours of testimony, and in

9  particular for the elements that Zynga has just cited.

10             THE COURT:  What else, Counsel?

11             MR. HALL:  We ask that you deny Zynga's

12  motion with regard to direct infringement.

13             THE COURT:  Anything else?

14             MR. HALL:  I believe Ms. Fair will handle

15  indirect infringement.

16             THE COURT:  All right.

17             MS. FAIR:  Your Honor, Andrea Fair for

18  PMC.

19             THE COURT:  Proceed.

20             MS. FAIR:  Mr. Zager challenged induced

21  infringement on the grounds that Zynga -- that PMC

22  hasn't proven the intent required for induced

23  infringement.

24             He challenged direct infringement, but

25  Dr. Hall just addressed how PMC has put on sufficient

1  evidence for a reasonable jury to conclude, taking all

2  of the evidence in the light most favorable to the

3  non-movant, that we have proven direct infringement.

4          And Mr. Zager conceded that Zynga took

5  action during the time that the patent was in force

6  intending to cause the acts by the other by the users

7  that infringe the patent.

8          He talked about how Mr. Carroll conceded

9  that they encouraged players to use their game.  So what

10 really what we're talking about on induced infringement

11 is whether PMC has put forth sufficient evidence for a

12 reasonable jury to conclude that Zynga intended -- had

13 the knowledge that the acts taken by its users

14 constitute infringement.

15         Now, the Commil case from this summer out

16 of the Federal Circuit sets forth a willful blindness

17 standard.  PMC doesn't have to prove that Zynga had an

18 objective belief that what its users were doing

19 constitute infringement.

20         PMC can prove that Zynga took deliberate

21 actions to avoid conforming a high probability that the

22 acts would constitute infringement.  And the evidence

23 that PMC has put forth on that element is that

24 Dr. Claypool spent hundreds of hours working on his

25 report.  He provided the 500 or 600-page report to

1   Zynga.  He testified about that on the stand.

2              So Zynga had an indepth analysis of how

3   its games infringed.  And Zynga did not put on any

4   evidence of a good-faith belief of invalidity, though

5   they had enablement still in the case at that point in

6   time.

7              They didn't put on any evidence of

8   analysis that was done by anybody at Zynga as to how the

9   games don't infringe or any good-faith belief of

10  non-infringement, and, in fact, their corporate

11  representative testified that he had not known about

12  this lawsuit until three months ago; that he didn't do

13  any claim-by-claim comparison; and he didn't have any

14  testimony to support a good-faith belief of

15  non-infringement or invalidity.

16             And so with Dr. Claypool's testimony,

17  paired together with no rebuttal evidence from Zynga of

18  a good-faith belief of non-infringement or invalidity,

19  that evidence is sufficient, taking all of it in the

20  light most favorable to the non-movant, PMC, to conclude

21  that Zynga took deliberate actions to avoid confirming a

22  high probability that the acts taken by its users

23  constitute infringement.

24             And we would ask that you deny Zynga's

25  motion for judgment as a matter of law on induced

1  infringement.

2            MR. RICE:  Good morning, Your Honor.  Jon

3  Rice responding on behalf of PMC on the contributory

4  infringement elements.

5            THE COURT:  Proceed.

6            MR. RICE:  All right.  So the first thing

7  we have to show is that we've put forward evidence that

8  Zynga sells or offers to sell a component or apparatus.

9            And as Lucent found -- as the Court in

10  Lucent found, that that software can be that apparatus.

11  The software can be that product.

12            So then we needed to show that -- that

13  there was the -- there was the sale and the offer to

14  sell.

15            And what we have and what the evidence

16  shows is that -- is that -- like, for example, that

17  Plaintiff's Exhibit 455, the privacy policy, Bakewell's

18  testimony on Page 230 -- on Page 231 of the transcript,

19  Becker's testimony on Page 166 of the transcript.

20            We have testimony from Bakewell that

21  there are a hundred million monthly average users.  We

22  have testimony from Dr. Becker that 1.5 million of those

23  users actually pay money.

24            And so whether the -- whether -- whether

25  people pay to actually buy Zynga's software is not

1    dispositive.  And, in fact, the Maxim Integrated

2    Products case at 213 West Law 5777295 addressed that

3    exact point.

4              And what the Court there found in denying

5    the motion for summary judgment, which is the same

6    standard here, is that as long as there -- that the

7    evidence indicated that the user had to have some

8    relationship with the defendant in order to obtain the

9    free software.

10             And here, there's no dispute that Zynga's

11   customers have a relationship with Zynga.  They have to

12   fill out that privacy policy.

13             And as Mr. Tomlinson testified -- I'm

14   sorry -- Mr. Tomlinson testified, when they filled that

15   out, Zynga then uses that, they collect that information

16   in order to analyze uses of our sites and services to

17   provide a more personalized experience and to manage

18   advertising.

19             The evidence shows that for purposes

20   of -- of the advertising revenue, they get a benefit,

21   Zynga gets a benefit from its users whether the users

22   buy anything from Zynga or not.

23             And then, of course, 1.5 million Zynga

24   customers actually spend money to buy things that are

25   used in the games and that the purchase of that --

1  that -- virtual products infringes the patents and that

2  the use of that virtual product infringes the patent.

3           So I think there is more than sufficient

4  evidence to show that the first element here, that the

5  offer to sell a component or apparatus that is used in

6  the process during the time of an asserted claim in

7  force has been met.

8           We also had testimony from Dr. Claypool

9  that the -- that the Zynga games have no substantial

10 non-infringing use.  We put that slide up on the screen,

11 which I'm happy to show you, if you want to see it,

12 but -- but Dr. Claypool went through every single

13 element of that.

14          And he testified that there is no

15 substantial non-infringing use, that you can't play the

16 games without infringing.

17          Dr. Claypool testified that the patents

18 were foundational to Zynga's games.

19          Dr. Claypool testified about how the

20 apparatus constitutes a material part that -- that

21 Zynga's game constitutes a material part of the

22 invention disclosed in PMC's patents.

23          It's obvious that Zynga is -- in fact,

24 it's undisputed because Zynga admits from the stand that

25 they learned about the patents in February of 2012 and

1  that the product -- and that -- and that Dr. Claypool

2  has testified and that -- that the product or process

3  for which the component or apparatus has no -- has no

4  other substantial use may be covered by an asserted

5  claim.

6        Again, as Ms. Fair showed and as Dr. Hall

7  has showed, they had full knowledge of the game -- of

8  the -- of the -- of the patents, of our infringement

9  theories, of the -- of the -- of the evidence that we

10  thought showed the infringement, and they put -- they

11  did nothing in response to that.

12        The final step is that the use directly

13  infringes the asserted claims.  And as Dr. -- as

14  Dr. Hall has showed, there is more than sufficient

15  evidence to show direct infringement by PMC in the

16  testing and that by -- and that for Claim 6, by PMC

17  operating Zynga's servers.

18        And so in short, I think there is more --

19  there is more than sufficient evidence for -- for a

20  reasonable jury to find in favor of PMC on the issue of

21  contributory infringement.

22        THE COURT:  Looks like you're going to

23  have the whole trial team respond here mostly before

24  it's over, Mr. Zager.

25        Go ahead, Mr. Harrell.

1              MR. HARRELL:  It takes a lot of us to

2     respond to Mr. Zager, Judge.  Bob Harrell for PMC on

3     damages.

4              Mr. Zager raises three -- three principal

5     issues on damages.

6              First, running royalty, that there's no

7     evidence that in the damages model, we would be able to

8     use a running royalty.  There is sufficient damages,

9     however -- or sufficient evidence of running royalty

10    through the Overture license agreement.

11             There's evidence in the record from

12    Mr. Claypool that the Overture license agreement is

13    comparable -- or that the Overture patents are

14    comparable to the Harvey patents.

15             So that comparability exists.  In the

16    Overture license agreement, there is a running royalty.

17    So that provides sufficient evidence of the use of a

18    running royalty in this case.

19             Royalty rate, 2 percent.  Mr. Zager says

20    you can imply royalty rates of .25 percent to -- to .5

21    percent in PMC's licenses.

22             First of all, we disagree with that,

23    because in those licenses, which are lump-sum licenses,

24    you don't know what the denominator is that is in the

25    accused products, and so you, therefore, can't imply a

1  royalty rate from them.

2              But even more so, the Overture license

3  agreement has a 4 percent -- or the three Overture

4  license agreements that Mr. Becker considered have a

5  royalty rate that he determined to be 4 percent.  And so

6  from that 4 percent, he derived a rate of 2 percent to

7  apply in this case.  So there's sufficient evidence of

8  that 2 percent rate.

9              Mr. Zager's third point is apportionment.

10  He says that Dr. Becker has not apportioned the royalty

11  base.  We have two responses to that.

12              Number one is that the patents are

13  foundational.  We got that evidence from Mr. Claypool.

14  That is unrebutted.  If the patents are foundational,

15  there need be no apportionment.

16              Notwithstanding that, Dr. Becker did

17  apportion with respect to userpay revenue.  He only

18  considered the users who actually are paying.  He did

19  not consider the value that went to Zynga from the vast

20  majority of users who do not pay.

21              And -- and we know that there is value

22  from those users because that testimony came in through

23  Dorion Carroll and through Dr. Becker and through

24  Zynga's documents.

25              And -- excuse me -- with respect to

1  advertising revenue, he apportioned that as well.  He

2  only used certain amounts of the advertising revenue.

3  The parts he didn't use, he could have used, because

4  those revenues would not have been generated to Zynga if

5  the games had -- had not been played.  And because the

6  patents are foundational, you can't play the games

7  without the patents.

8              So I think I've hit all of the -- all of

9  the objections that Mr. Zager had.  In sum, there's

10  legally sufficient evidence of the damages in this case,

11  Your Honor.

12              THE COURT:  All right.  Any other

13  response from the Plaintiff to the Defendant's motion?

14              MR. ZAGER:  Response, Your Honor?

15              THE COURT:  Briefly.

16              MR. ZAGER:  Your Honor, I just want to

17  touch on a few things I heard some for the first time in

18  this case.

19              If we go to the issue of inducement and

20  whether the requisite intent exists, we now know that

21  this is a willful blindness case, because, frankly,

22  there is no evidence to the contrary.  And what is the

23  only basis you heard for an allegation of willful

24  blindness?

25              It's, well, they got Dr. Claypool's

1  report and they could have read it in this case, and

2  after they read it, they continued to try to get people

3  to use their games.

4            The problem with that is that sounds nice

5  as we lawyers all talk about it, but that's not in the

6  record of evidence that this jury is going to see.

7  They're not going to see Dr. Claypool's report, and

8  they're not going to see Dr. Schaefer's report in

9  response to it.  That's not part of the evidence in this

10  case.

11            So what they've articulated for you as

12  their basis for willful blindness is simply not part of

13  the record that you have before you upon which to base

14  your decision on our motion.

15            I would raise a second point.  Now, that

16  we know that this is a willful blindness case, it speaks

17  to the issue of the admissibility of those IPRs that we

18  talked about earlier that were excluded.  Because if the

19  allegation is post-suit you engaged in willful

20  blindness, you got an expert report and you were on

21  notice from the time that you got it, then certainly the

22  jury ought to be able to hear a response to that.

23            And we went to the Patent Office, and we

24  took advantage of the procedures there.  And the Patent

25  Office agreed with us that there was a substantial

1   likelihood of invalidity.  The IPRs are not before the

2   jury, and neither is Dr. Claypool's report, and the

3   requisite intent is just not there.

4                    Turning to contributory infringement.

5   This is really dressed up as a second bite at the

6   inducement apple, because the elements of contributory

7   infringement are not present here.  So what did we

8   learn?

9                    Well, for the first time, we learned that

10  the product is allegedly our software.  That's what

11  they've told you.  And it is undisputed that we do not

12  sell our software.  We just don't do it.  And there's no

13  evidence in the record that we sell any product to

14  anyone.

15                   This is just not a contributory

16  infringement case, and the sole reason to have it there

17  is so that the jury might get another bite at the apple,

18  if they were to decide no inducement.

19                   Now, the running royalty is the last

20  issue I wanted to discuss with the Court.  The evidence

21  that's missing in this case is the evidence to support a

22  running royalty in this case.  It's not part of

23  Dr. Becker's analysis.  He didn't get on the stand and

24  tell this jury, here's why you get a running royalty in

25  this case.

1             And the fact that the jury might hunt

2   through the Overture license and see that that contained

3   a running royalty doesn't meet the burden of proof that

4   PMC had here, which was to demonstrate by evidence

5   before this jury that a running royalty was appropriate

6   not in the Overture situation but in this situation.

7   And that's what's missing.

8             There is no testimony from any witness

9   about the propriety of a running royalty on the facts of

10  this case.

11            Thank you, Your Honor.

12            THE COURT:  Short reply from the

13  Plaintiff?  And then we've going to move on.

14            MS. FAIR:  Yes, Your Honor.

15            I just want to briefly respond to

16  Mr. Zager's comments about Zynga's inability to put

17  forth its good-faith belief of invalidity.

18            Up until Monday night, Zynga still prior

19  art, anticipation, and obviousness as part of their

20  allegations in this case that they could have presented

21  to the jury to show their good-faith belief of

22  invalidity.  They dropped that.

23            Up until yesterday, Zynga had its

24  allegations of enablement -- of an enablement ground of

25  invalidity in the case.  They chose to drop that.

1  So they had ample opportunity to put before the jury

2  their good-faith belief of invalidity without getting

3  into their procedures that are before the Patent -- the

4  PTO.

5            Additionally, they had the opportunity to

6  do with their expert as Dr. Claypool did.  Dr. Claypool

7  testified about how long his report was and how much

8  effort went into it.

9            Mr. Carroll did not say anything about

10  how Zynga had their expert, Dr. Schaefer, go through all

11  of this and they really believed that they weren't

12  infringing.

13            So we don't think that Zynga's motion for

14  judgment as a matter of law on induced infringement

15  should be granted.

16            THE COURT:  All right.

17            MR. ZAGER:  Your Honor, could I make a

18  statement to correct the record?

19            THE COURT:  You may make one statement,

20  Mr. Zager.

21            MR. ZAGER:  For the record, we did not

22  drop enablement.  We decided not to call Dr. Fox, and

23  those are not the same things as you're going to hear, I

24  suspect, later this morning.

25            THE COURT:  All right.  With regard to

1 the Defendant's motion for judgment as a matter of law

2 regarding, among other things, the issues of direct

3 infringement, indirect infringement, contributory

4 infringement, induced infringement, damages

5 apportionment, and royalty rate, the Court finds that

6 that motion should and is denied.

7             This denial does not preclude the

8 Defendant from filing a supporting written motion as the

9 Court's indicated earlier.  That motion should be filed

10 by or before 1:00 o'clock on Monday.  And this ruling

11 does not in any way hinder or limit the Defendant from

12 reurging the same or similar motion for judgment as a

13 matter of law post-verdict under Rule 50(b).

14             But for purposes of Rule 50(a), the

15 motion is in all things denied.

16             Does Plaintiff have a motion under

17 Rule 50(a) to offer?

18             MR. HILL:  We do, Your Honor.

19             I also have a quick question.  Do you

20 want us to file any kind of response for purposes of the

21 record, or just have our response stand based on what's

22 been said before?

23             THE COURT:  That is -- that is the

24 Plaintiff's call, Mr. Hill.  If you choose to file a

25 response, you should also have it filed by Monday at

1   1:00 o'clock.

2               MR. HILL:  Okay.  Thank you, Your Honor.

3               THE COURT:  I'll hear your motion.

4               MS. FAIR:  Your Honor, we're moving for

5   judgment as a matter of law on three grounds.  That is,

6   invalidity by anticipation, invalidity by obviousness,

7   and invalidity for lack of enablement.

8               Zynga has presented no evidence on any of

9   these three grounds of invalidity.  And based on no

10  evidence can a reasonable jury conclude that the patents

11  are invalid, because they were participated, because

12  they were obvious, or because they fail for lack of

13  enablement.

14              On enablement, the only evidence that

15  they've tried to put forward is based on an incorrect

16  legal standard.  They did not have an expert get up and

17  talk about the state of the art at the time of the

18  invention or talk about how a person having ordinary

19  skill in the art would have understood the claims in the

20  patents and been able -- or been unable to implement

21  them without undue experimentation.

22              And for those reasons, PMC moves for

23  judgment as a matter of law under Federal Rule of Civil

24  Procedure 50 on the grounds of anticipation,

25  obviousness, and lack of enablement.

1              MR. HARRELL:  Your Honor -- Your Honor,

2    in addition, PMC moves for infringement as a matter of

3    law under both patents, '717 and '638, for purposes of

4    the record.

5              Thank you.

6              THE COURT:  All right.  Anything further

7    from the Plaintiff?

8              MR. HILL:  No, Your Honor.

9              THE COURT:  Response from the Defendant?

10

11             THE COURT:  All right.  Any other

12   response from the Plaintiff to the Defendant's motion?

13             MR. ZAGER:  Response, Your Honor?

14             THE COURT:  Briefly.

15             MR. ZAGER:  Your Honor, I just want to

16   touch on a few things I heard some for the first time in

17   this case.

18             If we go to the issue of inducement and

19   whether the requisite intent exists, we now know that

20   this is a willful blindness case, because, frankly,

21   there is no evidence to the contrary.  And what is the

22   only basis you heard for an allegation of willful

23   blindness?

24             It's, well, they got Dr. Claypool's

25   report and they could have read it in this case, and

1  after they read it, they continued to try to get people

2  to use their games.

3            The problem with that is that sounds nice

4  as we lawyers all talk about it, but that's not in the

5  record of evidence that this jury is going to see.

6  They're not going to see Dr. Claypool's report, and

7  they're not going to see Dr. Schaefer's report in

8  response to it.  That's not part of the evidence in this

9  case.

10            So what they've articulated for you as

11  their basis for willful blindness is simply not part of

12  the record that you have before you upon which to base

13  your decision on our motion.

14            I would raise a second point.  Now, that

15  we know that this is a willful blindness case, it speaks

16  to the issue of the admissibility of those IPRs that we

17  talked about earlier that were excluded.  Because if the

18  allegation is post-suit you engaged in willful

19  blindness, you got an expert report and you were on

20  notice from the time that you got it, then certainly the

21  jury ought to be able to hear a response to that.

22            And we went to the Patent Office, and we

23  took advantage of the procedures there.  And the Patent

24  Office agreed with us that there was a substantial

25  likelihood of invalidity.  The IPRs are not before the

1  jury, and neither is Dr. Claypool's report, and the

2  requisite intent is just not there.

3              Turning to contributory infringement.

4  This is really dressed up as a second bite at the

5  inducement apple, because the elements of contributory

6  infringement are not present here.  So what did we

7  learn?

8              Well, for the first time, we learned that

9  the product is allegedly our software.  That's what

10  they've told you.  And it is undisputed that we do not

11  sell our software.  We just don't do it.  And there's no

12  evidence in the record that we sell any product to

13  anyone.

14              This is just not a contributory

15  infringement case, and the sole reason to have it there

16  is so that the jury might get another bite at the apple,

17  if they were to decide no inducement.

18              Now, the running royalty is the last

19  issue I wanted to discuss with the Court.  The evidence

20  that's missing in this case is the evidence to support a

21  running royalty in this case.  It's not part of

22  Dr. Becker's analysis.  He didn't get on the stand and

23  tell this jury, here's why you get a running royalty in

24  this case.

25              And the fact that the jury might hunt

1 through the Overture license and see that that contained

2 a running royalty doesn't meet the burden of proof that

3 PMC had here, which was to demonstrate by evidence

4 before this jury that a running royalty was appropriate

5 not in the Overture situation but in this situation.

6 And that's what's missing.

7                    There is no testimony from any witness

8 about the propriety of a running royalty on the facts of

9 this case.

10                    Thank you, Your Honor.

11                    THE COURT:  Short reply from the

12 Plaintiff?  And then we've going to move on.

13                    MS. FAIR:  Yes, Your Honor.

14                    I just want to briefly respond to

15 Mr. Zager's comments about Zynga's inability to put

16 forth its good-faith belief of invalidity.

17                    Up until Monday night, Zynga still prior

18 art, anticipation, and obviousness as part of their

19 allegations in this case that they could have presented

20 to the jury to show their good-faith belief of

21 invalidity.  They dropped that.

22                    Up until yesterday, Zynga had its

23 allegations of enablement -- of an enablement ground of

24 invalidity in the case.  They chose to drop that.

25 So they had ample opportunity to put before the jury

1  their good-faith belief of invalidity without getting

2  into their procedures that are before the Patent -- the

3  PTO.

4           Additionally, they had the opportunity to

5  do with their expert as Dr. Claypool did.  Dr. Claypool

6  testified about how long his report was and how much

7  effort went into it.

8           Mr. Carroll did not say anything about

9  how Zynga had their expert, Dr. Schaefer, go through all

10  of this and they really believed that they weren't

11  infringing.

12           So we don't think that Zynga's motion for

13  judgment as a matter of law on induced infringement

14  should be granted.

15           THE COURT:  All right.

16           MR. ZAGER:  Your Honor, could I make a

17  statement to correct the record?

18           THE COURT:  You may make one statement,

19  Mr. Zager.

20           MR. ZAGER:  For the record, we did not

21  drop enablement.  We decided not to call Dr. Fox, and

22  those are not the same things as you're going to hear, I

23  suspect, later this morning.

24           THE COURT:  All right.  With regard to

25  the Defendant's motion for judgment as a matter of law

1   regarding, among other things, the issues of direct

2   infringement, indirect infringement, contributory

3   infringement, induced infringement, damages

4   apportionment, and royalty rate, the Court finds that

5   that motion should and is denied.

6            This denial does not preclude the

7   Defendant from filing a supporting written motion as the

8   Court's indicated earlier.  That motion should be filed

9   by or before 1:00 o'clock on Monday.  And this ruling

10  does not in any way hinder or limit the Defendant from

11  reurging the same or similar motion for judgment as a

12  matter of law post-verdict under Rule 50(b).

13           But for purposes of Rule 50(a), the

14  motion is in all things denied.

15           Does Plaintiff have a motion under

16  Rule 50(a) to offer?

17           MR. HILL:  We do, Your Honor.

18           I also have a quick question.  Do you

19  want us to file any kind of response for purposes of the

20  record, or just have our response stand based on what's

21  been said before?

22           THE COURT:  That is -- that is the

23  Plaintiff's call, Mr. Hill.  If you choose to file a

24  response, you should also have it filed by Monday at

25  1:00 o'clock.

```
 1                    MR. HILL:  Okay.  Thank you, Your Honor.

 2                    THE COURT:  I'll hear your motion.

 3                    MS. FAIR:  Your Honor, we're moving for

 4   judgment as a matter of law on three grounds.  That is,

 5   invalidity by anticipation, invalidity by obviousness,

 6   and invalidity for lack of enablement.

 7                    Zynga has presented no evidence on any of

 8   these three grounds of invalidity.  And based on no

 9   evidence can a reasonable jury conclude that the patents

10   are invalid, because they were participated, because

11   they were obvious, or because they fail for lack of

12   enablement.

13                    On enablement, the only evidence that

14   they've tried to put forward is based on an incorrect

15   legal standard.  They did not have an expert get up and

16   talk about the state of the art at the time of the

17   invention or talk about how a person having ordinary

18   skill in the art would have understood the claims in the

19   patents and been able -- or been unable to implement

20   them without undue experimentation.

21                    And for those reasons, PMC moves for

22   judgment as a matter of law under Federal Rule of Civil

23   Procedure 50 on the grounds of anticipation,

24   obviousness, and lack of enablement.

25                    MR. HARRELL:  Your Honor -- Your Honor,
```

```
 1    in addition, PMC moves for infringement as a matter of

 2    law under both patents, '717 and '638, for purposes of

 3    the record.

 4                    Thank you.

 5                    THE COURT:  All right.  Anything further

 6    from the Plaintiff?

 7                    MR. HILL:  No, Your Honor.

 8                    THE COURT:  Response from the Defendant?

 9                    MR. ZAGER:  I'll briefly mention

10    invalidity by anticipation and obviousness, patent

11    infringement as a matter of law.  The real meat I want

12    to talk about is enablement.

13                    As the Court is well aware, we never

14    presented the anticipation and obviousness defenses in

15    this case, and made a decision not to do that before we

16    even started the trial.

17                    As to the infringement as a matter of

18    law, I think all of those arguments have been addressed

19    in response to our motion for judgment as a matter of

20    law on the various infringement theories.  And the Court

21    has already heard a recitation of the evidence there.  I

22    won't do it again.

23                    But I think enablement is very, very

24    important, and I want to spend some time on that.

25                    Now, as the Court is well aware, we
```

1  decided not to call an expert witness on enablement.

2  And where is it written that you must call an expert

3  witness to prove enablement?

4                It's not.  In fact, if you'll look at the

5  citations on your screen, Your Honor, it's pretty clear

6  that you can prove invalidity without expert opinion

7  under appropriate circumstances.  So what I want to talk

8  about is the evidence in this case.

9                What does PMC say that Mr. Harvey

10 invented?

11               Well, they say he invented, in their

12 opening, an interactive media experience that's both

13 personalized and shared.

14               Can you pull all that down, please,

15 Mr. Lodge?

16               That's both personalized and shared using

17 local and remote computers and mobile devices.  That's a

18 quote from PMC from their opening statement, Trial

19 Record 52, 8 through 13.

20               So the issue is, as the Court well knows,

21 would a person skilled in the art, upon reading the

22 patent document, be able to make that invention without

23 undue experimentation?

24               Now, if we take a look at the jury

25 instruction proposed by PMC, not Zynga in this case, on

1    the issue of enablement, we see the elements there that

2    PMC believes the Court should consider with respect to

3    the issue of what amounts to undue experimentation.

4              And those elements are barred from some

5    of the Federal Circuit case law:  The quantity of

6    experimentation necessary, the amount of direction or

7    guidance disclosed in the patent, the presence or

8    absence of working examples in the patent, the nature of

9    the invention, the state of the prior art, the relative

10   skill of those in the art, the predictability of the

11   art, and the breadth of the claims.

12             Now, what do we know?

13             We know that the Zynga patents share the

14   same specification.

15             And what is the evidence about that

16   specification?

17             Well, Mr. Harvey, in the trial record,

18   testified that he wrote the specification.

19             If we could find the right slide, please,

20   Mr. Lodge.

21             No.

22             No.

23             No.

24             No.

25             No.

1                    THE TECHNICIAN:  We don't have it.

2                    MR. ZAGER:  All right.  I can recite the

3    record citation, and I don't think it's in dispute, but

4    Mr. Harvey testified, at Trial Record 143, 20 through

5    23:  I wrote the specification.

6                    He also testified in the trial record at

7    116, 13 through 22, that he was not one skilled in the

8    art.  So we have an admission by the inventor, I'm not

9    one skilled in the art; I wrote the specification; and

10   I'm writing for an audience that is skilled in the art.

11                   Now, the specification in this patent

12   uses the word information thousands of times.

13                   If I might approach, Your Honor, I've

14   highlighted the use of the word information in the

15   patent specification so that the Court might get some

16   idea how many times that word appears.

17                   THE COURT:  You may approach.

18                   MR. ZAGER:  And that's from Plaintiff's

19   Exhibit 1, the specification of the '717 patent.  And as

20   I've indicated for the record, we performed the

21   highlighting so that the Court could see that

22   information, the word, appears literally a hundred times

23   on every page of the specification.

24                   Why is that important?

25                   Because Mr. Harvey testified that the

1    word information in patents is a word so vague that it

2    could mean virtually anything, at 147, Lines 3 through 7

3    of the trial record.

4              Now, if the specification is supposed to

5    enable the claims, supposed to teach one skilled in the

6    art how to do that, and we have unrebutted evidence from

7    the guy who wrote it saying that the word information is

8    so vague that it could mean almost anything, could the

9    jury conclude that the specification could not possibly

10   teach one skilled in the art how to enable the claims?

11             You bet you.  And the interesting thing

12   about that evidence is that it's completely unrebutted

13   in this case.

14             There is other evidence that I'd like to

15   talk to you about, about lack of enablement.  Mr. Harvey

16   testified that there was no operational prototype, at

17   142, Lines 12 through 14 of the trial record.

18             He also testified that PMC only built one

19   and never attempted to build another, at 141, 15 through

20   20 of the trial record.

21             Federal Circuit law says a failed attempt

22   at commercialization is strong evidence of a lack of

23   enablement.  The Ormco Corporation versus Align

24   Technologies case from the Federal Circuit in 2007.

25             We also have PMC's admission a few years

1  after the date of invention that the skills, knowledge,

2  and infrastructure for implementation are not presently

3  available.  And that comes from Defendant's Exhibit 47,

4  the -- the PMC business plan and the -- the Harvey

5  testimony, at 148, Lines 4 through 10 of the trial

6  record.

7                    If the skills, knowledge, and

8  infrastructure to implement PMC's invention were not

9  available in the 1990s, they surely were not available

10  in 1987.  And, again, this is an admission by

11  Mr. Harvey, the fellow who wrote the specification.  And

12  the evidence is clear and convincing, because it was

13  never rebutted by anyone in this trial.

14                    Delay in technological development long

15  after the date of the invention is also more evidence of

16  lack of enablement.  And that's the Federal Circuit in

17  the Plant Genetic Systems case, 315 F.3d 1335, in 2003.

18                    The unproven nature of technology is also

19  evidence of lack of enablement.  Mr. Harvey testified

20  that PMC never made a product, at Page 108, Lines 18

21  through 24 of the trial record.

22                    Now, PMC admits that they are now trying

23  to read these patents to apply to computers

24  communicating over the Internet and mobile devices.  So

25  then the special -- the specification must enable this

1   technology for the purpose of the claims.  And that's

2   the essence of full-scope enablement.

3                    What did Mr. Cuddihy say?  He was the

4   co-inventor.

5                    When he testified, he said that they knew

6   about what he called the embryonic Internet back when

7   Mr. Harvey wrote the specifications.  And that's

8   important, because under Federal Circuit law, Nascent

9   Technologies such as that needs to be enabled with a

10  specific useful teaching.

11                   So you have Mr. Cuddihy, the co-inventor,

12  say we knew about the Nascent Internet, and you have Mr.

13  Harvey admit that the word Internet appears nowhere in

14  the specification.  The Chiron case from the Federal

15  Circuit in 2004 -- if we can go back a slide, please,

16  Mr. Lodge -- says Nascent Technology, however, must be

17  enabled with a specific and useful teaching.  The law

18  requires an enabling disclosure for Nascent Technology.

19  Clear and convincing evidence, it is unrebutted.

20                   Now, we know that the Internet was not

21  commercially available until 1992.  That evidence is

22  unrebutted.

23                   And Mr. Cuddihy also testified that they

24  knew about cell phones back when Mr. Harvey wrote the

25  specification, but he makes no mention of them in the

1  specification, again looking at the Chiron case.  And we

2  know that digital phones were not available until 1992.

3              What does all of this mean?  All of this

4  means that it's pretty clear and convincing that the way

5  they're trying to read these patents was not enabled in

6  the specification, and that means you go to the issue of

7  undue experimentation.

8              And those are those eight factors that

9  PMC set out in its own proffer for a jury instruction.

10             And I know the Court is reluctant to

11 consider evidence of subsequent technological

12 developments.  The Court's made that clear.  But when it

13 comes to the issue of undue experimentation and the

14 eight elements that PMC agrees you should consider,

15 that's where some evidence of subsequent technological

16 development comes into play.

17             When you consider the quantity of

18 experimentation necessary to get there, you can look at

19 subsequent technological developments, not for the truth

20 of what happened in 1992, but for the fact that that did

21 not exist in 1987.  And that, too, is established

22 Federal Circuit law.

23             And so consequently, you may take those

24 technological developments and use them to look backward

25 to the date of the invention to look at what was not

1    known at that time.

2              And that certainly informs the quantity

3    of experimentation necessary to come to some conclusion

4    about whether there was enablement without undue

5    experimentation.

6              Now, let me give you some examples.  The

7    quantity of experimentation necessary where it is

8    undisputed that the computer languages would not be

9    available for another decade, no rebuttal to that.  But

10   that certainly informs the quantity of experimentation

11   necessary for one skilled in the art back in 1987 to get

12   there.

13             Digital phones not existing for several

14   more years in a digital network informs the quantity of

15   experimentation necessary back in 1987.

16             The amount and direction of guidance

17   disclosed in the patent -- that's the second element --

18   there is none.  Undisputed.  No mention of the Internet;

19   no mention of mobile phones.

20             The only examples we heard in this Court

21   were actually drawn up by we know not who, and

22   Mr. Harvey had to admit on cross-examination that the

23   diagram with all the circles and the Weather Channel

24   diagram with all the circles, he didn't know who created

25   them.  And those things certainly were not in the

1  specification.

2             The -- the presence or absence of working

3  examples.  Working examples would not have been possible

4  as of the date of the invention in 1987.  And how do we

5  know that?  We have an admission by a party opponent in

6  a business plan that says the skills, knowledge, and

7  infrastructure for implementation of personalized mass

8  media weren't available in 1987.

9             The nature of the invention, one of the

10  other factors to be considered, what did Mr. Harvey say

11  about that himself?  He said:  It's not something which

12  over time has been easy to use.

13             The breadth of the claims.  Well,

14  Mr. Cuddihy testified before the jury that they never

15  believed the claims were limited only to TV.

16             Dr. Claypool testified that the claims

17  cover the Internet, according to PMC, even though the

18  Internet did not exist at the time.

19             He testified that the claims cover mobile

20  device technology, according to PMC, even though mobile

21  device technology did not exist at the time.

22             And PMC has touted the expandability and

23  flexibility of these patents throughout the trial.  In

24  fact, according to PMC, the claims cover programming

25  languages that did not yet exist when the invention was

1    made, programming languages that are not mentioned in

2    the specification, including HTML, XML, Adobe Flash, and

3    JavaScript.

4              Again, all of those things inform the

5    nature of the experimentation necessary.  Not to suggest

6    that we're going to talk about the 1990s.  We're not.

7    But by virtue of the fact that they did not come into

8    existence until the 1980s, they inform the state of the

9    art at the time of the invention in 1987.

10             Finally, there's the issue of the quantum

11   of proof.  Clear and convincing evidence.  It's true

12   that we don't have an expert opinion.  I concede that.

13   It's also true we don't need one.

14             Does this rise to the level of clear and

15   convincing evidence?  We certainly think it does.  And

16   why?  Because none of what I told you in the last few

17   minutes is rebutted in any place in this trial record.

18             So you have admissions by a party

19   opponent that prove that the specification is ambiguous,

20   which would show that one skilled in the art would have

21   difficulty since the word information is vague and

22   ambiguous and appears thousands of times in the spec,

23   and then you turn to the issue of undue experimentation

24   and the evidence that informs that.

25             Your Honor, I believe we've made a pretty

1   good enablement case here.  And we don't think that case

2   should be decided against us as a matter of law.

3            At the very least, this Court should let

4   the jury decide that issue.  And if the Court, based

5   upon its reflection, has qualms about it, then a JMOV

6   might be the right road to go down, but we think we've

7   made a pretty solid enablement case, and we believe the

8   record supports it.

9            THE COURT:  Plaintiff have a response to

10  the motion?

11           MS. FAIR:  Yes, Your Honor.

12           Your Honor, Mr. Zager said he thinks they

13  have a pretty good enablement case.  Pretty good isn't

14  clear and convincing evidence.

15           Clear and convincing requires that the

16  jury have an abiding conviction of the truth of the

17  party's factual contentions because they are highly

18  probable.

19           And the reason the jury can't have an

20  abiding conviction that the claimed invention in this

21  case is not enabled is because the arguments

22  that Mr. Zager just presented about enablement are

23  legally flawed.

24           Enablement is a claims analysis.  It's an

25  analysis of looking at the claim language and the

1  specification.

2            And it is critical to have an expert look

3  at the claims, look at the specification, and say, a

4  person having ordinary skill in the art would read the

5  claims and would read the specification and would either

6  know or not know how to implement the claimed invention

7  without undue experimentation at the time of the

8  invention.

9            And Mr. Zager spent a long time talking

10 about the Internet and cell phones and HTML and XML and

11 all of the technologies that Zynga uses to embody the

12 claimed invention.  That's not what the law requires for

13 enablement.

14           Johns Hopkins case from 1988 in the

15 Federal Circuit said that you only have to enable one

16 embodiment of the claim.  You only have to enable one

17 embodiment of the invention to meet the enablement

18 requirement.

19           Full scope enablement that Mr. Zager's

20 talking about is not the law.  Full scope enablement

21 requires looking at the claims and the Court's

22 construction of that language, as this Court has ordered

23 in striking Dr. Fox's second supplemental report.

24           There is no evidence in this case of

25 which claim of the patents at issue in this case are

1  not -- is not enabled.  No expert has taken the stand

2  and read a claim and said this couldn't have been

3  practiced in 1987.

4               And, in fact, Mr. Harvey got up -- got up

5  and talked about the prototype that PMC put together

6  with outdated technology even at the time that embodied

7  the -- the inventions.  He testified that the prototype

8  worked.

9               Mr. Zager talks about a 1991 business

10 plan that talks about how there are more technologies

11 that could use the invention.  The line that Mr. Zager

12 has taken out of that document is out of context, and

13 one line in a document is not enough to meet the clear

14 and convincing burden for lack of enablement.

15              In short, Your Honor, we're hearing the

16 same thing that we heard from Dr. Fox's second

17 supplemental report, and that is that Zynga is trying to

18 prove lack of enablement on a flawed legal standard.

19              There's no evidence of anybody looking at

20 the claims in this case, comparing them to the

21 specification, and proving that -- by clear and

22 convincing evidence that a person having ordinary skill

23 in the art would not be able to practice the claimed

24 invention in 1987 without undue experimentation.

25              All of the factors for undue

1    experimentation that Mr. Zager laid up here on the

2    screen, nobody's gotten up and talked about how those

3    factors play into the claimed invention.

4                    And so in short, although Mr. Zager's

5    argument may have been persuasive about how the Internet

6    wasn't around in 1987, it's irrelevant to enablement,

7    and it's not in evidence.

8                    MR. ZAGER:  Short response, Your Honor?

9                    THE COURT:  Very short.

10                   MR. ZAGER:  Your Honor, this is not

11   Dr. Fox's report.  Dr. Fox's report that was stricken

12   was, are the games enabled.  This is an enablement

13   analysis based upon the definition of what the invention

14   is, as offered by the Plaintiff in opening statement.

15                   But here's the thing:  If Mr. Harvey had

16   stood on the -- sat down on the stand and said,

17   Mr. Zager, I admit my specification I wrote does not

18   enable the claims, would this Court have any trouble

19   letting that go to the jury?

20                   Well, the fact he didn't come right out

21   and say that, but he said some other things that come

22   awfully close, that ought to go to the jury, too.

23   And the standard of clear and convincing evidence -- I

24   think the reason they're afraid to let this go to the

25   jury is that they suspect the jury will believe me when

 1  I point out how many times information appears in that

 2  specification, and an admission from the guy who wrote

 3  it, that that word is virtually meaningless.

 4          I think we have plenty of evidence in

 5  this record, none of it responded to, that goes to

 6  enablement, and it's for me, on closing argument, to tie

 7  that all together, but the evidence itself is there.

 8  And the evidence is part of this record.  We think we

 9  deserve to have the jury hear enablement.

10          THE COURT:  All right.  With regard to

11  the Defendant's -- excuse me -- the Plaintiff's motion

12  for judgment as a matter of law under Rule 50(a), the

13  Court, as it did with the Defendant's motion, permits

14  the Plaintiff to file any supporting written version of

15  their motion that they choose to before 1:00 o'clock on

16  Monday, and likewise permits the Defendant to file any

17  written response that they choose to by 1:00 o'clock on

18  Monday.

19          With regard to the Plaintiff's motion,

20  the Court denies the motion for judgment as a matter of

21  law as to the issue of infringement.

22          As to the issues -- or as to the issue of

23  invalidity based upon anticipation, obviousness, or lack

24  of enablement, the Court finds that a reasonable jury

25  would not have a legally sufficient evidentiary basis to

1    find for the Defendant on any of those issues.

2                    The Court finds the Defendant has failed

3    to meet its clear and convincing evidence burden of

4    proof on each of those three theories of invalidity,

5    and, therefore, the Court grants the Plaintiff's motion

6    for judgment as a matter of law as to invalidity based

7    upon anticipation, obviousness, or lack of enablement.

8                    All right, Counsel.  I assume those are

9    all the motions from the parties as to Rule 50(a).  I

10   plan next to meet with those of your respective trial

11   teams that are charged with working on the final jury

12   instructions and verdict form in chambers for an

13   informal charge conference, and I'll do that in

14   15 minutes at 9:30.

15                    Until then, we stand in recess.

16                    COURT SECURITY OFFICER:  All rise.

17                    (Recess.)

18                    (Jury out.)

19                    COURT SECURITY OFFICER:  All rise.

20                    THE COURT:  Be seated, please.

21                    All right.  I understand, Mr. Zager, you

22   have a motion to offer on behalf of the Defendant?

23                    MR. ZAGER:  I do, Your Honor.

24                    THE COURT:  The Court will hear from you

25   at this time.

1            MR. ZAGER:  Thank you, Your Honor.  Steve

2   Zager for Zynga.

3            May it please the Court.

4            The Court has granted now the Plaintiff's

5   motion for judgment as a matter of law on all of the

6   invalidity claims in the case.  When we rested, that was

7   not the state of the case.

8            As a result, we move to reopen the

9   evidence solely for the purpose now of introducing

10  before the jury the IPRs that were previously excluded

11  on the basis of the prejudice that would result to PMC

12  in connection with our invalidity defenses, if they were

13  admitted, for all of the same reasons that we've already

14  talked to the Court about as to why we believe they're

15  relevant.

16            Thank you, Your Honor.

17            THE COURT:  Is there a response from the

18  Plaintiff?

19            MR. HILL:  Your Honor, I will be very

20  brief.

21            From the Plaintiff's perspective, the

22  Court made the correct ruling originally now that we've

23  seen what the level of prejudice, the basis on which the

24  Court excluded the IPRs, have remained the same.

25            The probative value of those proceedings

1  has now decreased markedly considering that there is

2  no -- there was no invalidity evidence presented to the

3  jury.  So to present, in contrast now to the IPR, under

4  that circumstance, they would be even less probative,

5  but the prejudicial effect remains the same.

6          So we think the 403 balance even tips

7  even more in our favor.

8          MR. ZAGER:  Short response, Your Honor?

9          THE COURT:  Very short.

10          MR. ZAGER:  Your Honor, the purpose of

11  the IPR is to prove our good-faith belief in invalidity

12  as a defense to inducement under the Commil case.

13          And so that was the purpose of the IPRs,

14  and they remain probative of that because the inducement

15  is still in the case.  And that's our defense, that we

16  had no intent, and so consequently, they're just as

17  probative as they ever were.

18          THE COURT:  Well, the Court denies the

19  Defendant's motion.  The Court believes that under a

20  403-type analysis, that the potential for prejudice by

21  the admission or use of these IPRs would far outweigh

22  any probative value.

23          The Court further believes that the

24  prejudice is not limited to any particular or isolated

25  portion of the case but would be prejudicial to the case

 1   as a whole.

 2              And, therefore, notwithstanding the

 3   Court's grant of a portion of the Plaintiff's motion for

 4   judgment as a matter of law, still believes that the

 5   remaining prejudice -- prejudicial effect supports the

 6   Court's ruling.  So the motion's denied.

 7              I also understand the Defendant's desire,

 8   for purposes of preserving their record, to make a

 9   written proffer of evidence.  I'll hear from the

10   Defendants in that regard.

11              MR. WILLIAMS:  Your Honor, Fred Williams

12   for Zynga.

13              If I may approach, I've got -- I've got

14   three of these written proffers.

15              THE COURT:  All right.  You may approach.

16              MR. WILLIAMS:  Your Honor, I've handed

17   the Court three proffers.

18              The first is Zynga's proffer on

19   excluded -- excluded inter partes review evidence.

20              And then the second is tender of a

21   limiting jury instruction related to the inter partes

22   review evidence.

23              The third is Zynga's proffer of excluded

24   testimony of David Crane.

25              And I understand that PMC does not object

```
 1  to those.

 2              We also have a fourth that we have

 3  prepared for Dr. Fox and confirm with counsel with

 4  PMC -- they've asked us to remove some of that

 5  information.  With the Court's permission, we'd like to

 6  be able to file that in a little bit today after we can

 7  get all of the details worked out with the Plaintiff.

 8              THE COURT:  All right.  What else do you

 9  have for me on this?

10              MR. WILLIAMS:  That's all, Your Honor.

11              THE COURT:  Is there objection to the

12  proffer from the Plaintiff?

13              MR. HARRELL:  No objection, except for

14  Dr. Fox's, which we'll probably work out.

15              THE COURT:  Well, I'll assume that if

16  there are not disputes with regard to Dr. Fox's proffer,

17  that it will be submitted by agreement.  If I hear

18  otherwise, then I'll take those up if and when they

19  present themselves.

20              But that notwithstanding, the proffer as

21  tendered and is accepted by the Court for purposes of

22  the record.

23              MR. WILLIAMS:  Thank you, Your Honor.

24              THE COURT:  All right.  We'll next move

25  to the formal charge conference.
```

1          Earlier today, the Court met with counsel

2    in chambers and conducted an informal charge conference.

3    That was based upon the Court's revision of the parties'

4    joint submission of a proposed final jury instruction

5    and verdict form.

6          The Court's revision was furnished to the

7    parties yesterday evening, and with an opportunity to

8    have reviewed and adjusted the same, the Court met

9    earlier today with the parties, informally listened to

10   their comments and suggestions, both as to what the

11   Court had furnished and to any additional provisions

12   that they wish to be included that were not set forth

13   therein.

14         The Court's taken those comments and

15   proposals into consideration and has generated a revised

16   final jury instruction and verdict form, which the

17   parties have received and had an opportunity to review,

18   and it's now the Court's intent, for purposes of the

19   record, to hear from those parties -- hear from the

20   parties and take up any remaining objections that either

21   party would wish to make as to the final instructions to

22   the jury and the verdict form.

23         So with that, the Court first turns

24   attention to the current version of the final jury

25   instructions that was generated post the informal charge

1  conference and delivered earlier today to the parties.

2           And turning to Page 1, I'll ask if there

3  are any objections from either party.  And my intent,

4  Counsel, is to go through this on a page-by-page basis.

5           Counsel who are charged or tasked with

6  responding for your respective sides may simply want to

7  stand at the podium, so if there's a place where you

8  have a comment or objection to make, you'll be there,

9  and we won't waste time walking back and forth and back

10 and forth.

11          So if those respective counsel want to go

12 to the podium at this time, we'll start with a review of

13 the final jury instructions.

14          Are there objections from either

15 Plaintiff or Defendant as to the contents of Page 1 of

16 the final jury instructions?

17          MS. FAIR:  None by Plaintiff, Your Honor.

18          MR. MOFFETT:  Daniel Moffett on behalf of

19 Zynga.

20          No objections.

21          THE COURT:  All right.  Page 2 of the

22 jury instruction.

23          MS. FAIR:  Your Honor, Andrea Fair for

24 Plaintiff.

25          None for Plaintiff on Page 2.

 1                    MR. MOFFETT:  No objection from

 2  Defendant.

 3                    THE COURT:  Page 3.

 4                    MS. FAIR:  No objection from Plaintiff.

 5                    MR. MOFFETT:  No objection from

 6  Defendant.

 7                    THE COURT:  Page 4.

 8                    MS. FAIR:  No objection from Plaintiff.

 9                    MR. MOFFETT:  No objection.

10                    THE COURT:  Page 5.

11                    MS. FAIR:  No objection.

12                    MR. MOFFETT:  No objection.

13                    THE COURT:  Page 6.

14                    MS. FAIR:  No objection.

15                    MR. MOFFETT:  No objection.

16                    THE COURT:  Page 7.

17                    MS. FAIR:  Your Honor, Plaintiff objects

18  at the bottom of Page 7 on the numbered Paragraphs 1, 2,

19  and 3, where it reads:  An apparatus, the apparatus, and

20  the apparatus.

21                    Plaintiff proposes that it reads a

22  material or apparatus, a material or apparatus, and

23  material or apparatus.

24                    THE COURT:  All right.

25                    MS. FAIR:  No other objections on Page 7.

 1                  THE COURT:  Plaintiff's objection as

 2  noted on Page 7 is overruled.

 3                  Is there objection from the Defendant as

 4  to anything on Page 7?

 5                  MR. MOFFETT:  No objection on 7, Your

 6  Honor.

 7                  THE COURT:  Next then, turning to Page 8,

 8  are there objections from either party as to the

 9  contents of Page 8?

10                  MS. FAIR:  Your Honor, at the top of Page

11  8, No. 4, Plaintiff proposes that it reads:  Zynga is

12  aware of the patent containing the asserted claim and

13  knows that the product or process for which the

14  component or material or apparatus has no other

15  substantial use may be covered by an asserted claim.

16  And then lower, on Page 8, the paragraph numbered 3 that

17  begins Zynga was aware, after the or, Plaintiff proposes

18  that it read:  Zynga took deliberate actions to avoid

19  confirming a high probability that the acts, if taken,

20  would constitute infringement of the patent.

21                  And then the last line of Page 8 where it

22  begins Zynga believed, Plaintiff proposes that it read:

23  Zynga took deliberate actions to avoid confirming the

24  high probability that the acts, if taken, would

25  constitute infringement of the patent.

1            And then that would strike all the way

2    through the top of Page 9 and begin to pick up again, in

3    order to find inducement of infringement.

4            So we object to the charge as written and

5    propose the instruction as I just read it.

6            THE COURT:  All right.  Those objections

7    as to Page 8 carrying over to the top of Page 9 from

8    the -- from the Plaintiff are overruled.

9            Are there objections on Page 8 from the

10   Defendant?

11           MR. MOFFETT:  Yes, Your Honor.

12   Defendant objects to two portions, a portion on Page 8

13   and another section going from Page 8 to Page 9.

14   In particular, Zynga objects to language on -- under

15   point 3 on Page 8 beginning:  Or Zynga believed there

16   was a high probability that the acts, if taken, would

17   constitute infringement of the patent, but deliberately

18   avoided confirming that belief because this goes to

19   blindness, which we contend there's no evidence of.

20           Similarly, Zynga objects to the phrase

21   beginning on the second to last line of Page 8, reading:

22   Or that Zynga believed there was a high probability that

23   the other party or parties would infringe the patent,

24   but remained willfully blind to the infringing nature of

25   the other parties' acts.

 1                    And we ask -- we object to both of those

 2    and we ask that they be stricken.

 3                    THE COURT:  All right.  Defendant's

 4    objections as lodged with regard to the contents of

 5    Page 8 and carrying over to the top of Page 9 are also

 6    overruled.

 7                    Are there additional objections from

 8    either party as to the remainder of Page 9?

 9                    MS. FAIR:  None from Plaintiff, Your

10    Honor.

11                    MR. MOFFETT:  Yes, Your Honor.

12                    Defendant objects to the exclusion of an

13    instruction from the DSU Medical case, and we ask that

14    the following be added after the first partial paragraph

15    on Page 9, and that is the following:  Merely intending

16    to cause the acts that produce direct infringement is

17    not sufficient to establish induced infringement.

18                    THE COURT:  All right.  That objection

19    and proposed addition is overruled.

20                    MR. MOFFETT:  And -- and, Your Honor,

21    we -- we all have additional objection on Page 9, prior

22    to the discussion of damages, which begins at the last

23    partial paragraph on Page 9.  Zynga objects to the

24    exclusion of an instruction on invalidity and Zynga

25    requests that the following be added to the

instructions:

Zynga claims that PMC's patents are not valid.  A patent issued by the United States Patent Office is presumed to be valid.  In order to rebut this presumption, Zynga must establish by clear and convincing evidence that the asserted claims are not valid.

Zynga contends that the asserted claims are invalid as the specifications in the patents do not meet the enablement requirement of the patent statute, which I'll explain in more detail.

If you find by clear and convincing evidence that a claim fails to meet the enablement requirement, you should find that the claim is invalid and render a verdict for Zynga on the claim.

Enablement.  Zynga contends that the asserted claims are invalid, because the patent does not disclose sufficient information to enable one skilled in the field of the invention at the time the application was filed or its effective filing date to make and use the claimed invention.

This requirement is known as the enablement requirement.  If the patent claim is not enabled, it is invalid.  Each claim must be analyzed in compliance with the enablement requirement.  Zynga must

1 prove by clear and convincing evidence that the claim

2 was not enabled.

3          In considering whether a patent claim

4 satisfies the enablement requirement, you must keep in

5 mind that the patents are written for persons skilled in

6 the field of the invention as the patent need not

7 expressly state information that skilled persons would

8 be likely to know or could obtain.

9          Zynga bears the burden of establishing

10 lack of enablement by showing by clear and convincing

11 evidence that a person skilled in the art, upon reading

12 the patent document, would not be able to make the

13 invention work without undue experimentation.

14          The fact that some experimentation may be

15 required for a skilled person to make or use the claimed

16 invention does not mean that a patent's written

17 description fails to meet the enablement requirement.

18          The fact you may consider in determining

19 whether making the invention would require undue

20 experimentation include the quantity of experimentation

21 necessary, the amount of direction or guidance disclosed

22 in the patent, the presence or absence of working

23 examples in the patent, the nature of the invention, the

24 state of the prior art, the relative skill of those in

25 the art, predictability of the art, and the breadth of

1    the claims.

2                      If you find that one or more of these

3    claims do not comply with the enablement requirement,

4    you must find each such claim invalid.

5                      THE COURT:  All right.  That objection

6    and request for additional inclusion in the charge is

7    overruled and denied by the Court.

8                      Moving to Page 10, is there any objection

9    from either party as to the contents of Page 10 in the

10   proposed final jury instruction?

11                     MS. FAIR:  None for Plaintiff.

12                     MR. MOFFETT:  No objection from the

13   Defendant.

14                     THE COURT:  Is there objection as to Page

15   11?

16                     MS. FAIR:  None from Plaintiff.

17                     MR. MOFFETT:  No objection from

18   Defendant.

19                     THE COURT:  Is there objection as to the

20   contents of Page 12?

21                     MS. FAIR:  None from Plaintiff.

22                     MR. MOFFETT:  No objection.

23                     THE COURT:  Page 13.

24                     MS. FAIR:  None from Plaintiff.

25                     MR. MOFFETT:  No objection.

```
 1                    THE COURT:  And the final page of the

 2   proposed jury instructions, Page 14.

 3                    MS. FAIR:  None from Plaintiff.

 4                    MR. MOFFETT:  No objection.

 5                    THE COURT:  Okay.  Those matters being

 6   raised and overruled by the Court, the final jury

 7   instructions, as you have them before you, are the

 8   instructions the Court will give to the jury beginning

 9   at 1:00 o'clock on Monday afternoon.

10                    I'll next turn your attention to the

11   proposed verdict form containing five pages, and I'll

12   ask if either party has objections they wish to make for

13   the record as to the proposed verdict form.

14                    Starting with Page 1, is there any

15   objection?

16                    MS. FAIR:  None for Plaintiff.

17                    MR. MOFFETT:  And no objection to Page 1,

18   Your Honor.

19                    THE COURT:  Page 2.

20                    MS. FAIR:  None for Plaintiff.

21                    MR. MOFFETT:  Your Honor, Zynga objects

22   to the exclusion of the particular question on Page 2.

23   Before Question No. 2, Zynga proposes the following

24   question:  Do you find that Zynga knew of the PMC

25   patents that Zynga sells or offers an apparatus for the
```

1  use and the process covered by a PMC patent and that

2  Zynga knew that the process for which the provided

3  apparatus was especially designed would infringe one or

4  more claims of a PMC patent?

5                    Answer:  Yes or no.

6                    THE COURT:  All right.  That proposed

7  addition by the Defendant is overruled.

8                    Are there any other objections as to Page

9  2 from the Defendant?

10                   MR. MOFFETT:  No, Your Honor.

11                   THE COURT:  And turning to Page 3, are

12 there any objections from either party as to the

13 contents of Page 3 of the verdict form?

14                   MS. FAIR:  None for Plaintiff.

15                   MR. MOFFETT:  Your Honor, yes, Defendant

16 has an objection.  We request the additional question

17 prior to Question No. 3 --

18                   THE COURT:  And, Counsel, if you would

19 slow down for the court reporter's benefit.  I don't

20 mind you reading it word for word, but slow down just a

21 little bit.

22                   MR. MOFFETT:  I apologize, Your Honor.

23                   THE COURT:  Go ahead.

24                   MR. MOFFETT:  The additional question

25 will be as follows:  Do you find that Zynga knew of the

1  PMC patents, aided, instructed, or otherwise intended to

2  cause players of its accused games to directly infringe

3  PMC patents and that Zynga knew that its actions would

4  result in direct infringement?

5              Answer:  Yes or no.

6              THE COURT:  All right.  That proposed

7  addition and change to Page 3 of the verdict form is

8  overruled.

9              Are there any objections from either

10  party as to the contents of Page 4 of the verdict form?

11              MS. FAIR:  None for Plaintiff.

12              MR. MOFFETT:  Yes, Your Honor.

13  Defendant objects to the exclusion of a question on

14  invalidity.  Defendant proposes the following question:

15  Do you find that Zynga has proven by clear and

16  convincing evidence that any of the following claims are

17  invalid for not being enabled to the full scope of the

18  claim?

19              Answer:  Yes or no for each claim.

20              Claim 1 of U.S. Patent 7,797,717.

21              Claim 4 of U.S. Patent 7,797,717.

22              Claim 7 of U.S. Patent 7,797,717.

23              Claim 1 of U.S. Patent 7,908,638.

24              Claim 3 of U.S. Patent 7,908,638.

25              Claim 6 of U.S. Patent 7,908,638.

1                    THE COURT:  All right.  The objection of

2    the Defendant's, including their requested additional

3    insertion on Page 4 of the verdict form, is overruled.

4    Is there objection from either party as to Page 5 of the

5    verdict?

6                    MS. FAIR:  None, Your Honor.

7                    MR. MOFFETT:  No objection from the

8    Defendant.

9                    THE COURT:  All right.  Then the verdict

10   form before you, counsel, is the one that the Court will

11   submit to the jury when they are instructed to retire

12   and deliberate, the various objections being raised as a

13   part of this formal charge conference with regard to the

14   verdict form having been expressly overruled by the

15   Court.

16                   Thank you, Counsel.  You may have a seat.

17                   That completes the formal charge

18   conference both as to the Court's final instructions to

19   the jury and the verdict form.

20                   For the record, during an earlier

21   conference with counsel for both sides that was not on

22   the record, the Court understands that the Defendant's

23   earlier agreement to not exchange slides to be used in

24   closing argument has been withdrawn, and therefore, the

25   Court withdraws its previously granted permission to

1    avoid and not engage in express exchange of those slides

2    prior to final jury argument, and the Court directs the

3    parties to exchange with each other their proposed

4    slides for use in final jury argument by 9:00 o'clock on

5    Monday morning.

6              And if there are disputes, the Court will

7    take them up before 1:00 o'clock when the Court intends

8    to charge the jury and permit, as a part thereof, final

9    argument by counsel.

10             Also, during the course of the trial, the

11   Plaintiffs moved the Court to expressly direct and

12   authorize the numbering and inclusion of various jury

13   aids that have been generated during the course of the

14   trial or similar demonstratives that have been used

15   before the jury, none of which are exhibits in this

16   case, none of which are evidence admitted into evidence

17   in this case.

18             The Court took that request made by the

19   Plaintiff under advisement.  The Court has since

20   considered the same fully and has determined, within the

21   Court's discretion, that that is not something the Court

22   is inclined to do, and therefore, the request by the

23   Plaintiff in that regard is overruled.

24             Is counsel aware of anything else that

25   the Court needs to take up and clarify prior to final

1    instructions and jury argument on Monday afternoon?

2                    MR. ZAGER:  Nothing for Zynga, Your

3    Honor.

4                    MR. HILL:  Nor for Plaintiff, Your Honor.

5                    THE COURT:  All right.  I will see you

6    Monday.  We'll convene with the jury at 1:00 o'clock.

7    I'll be available, hopefully, at least a couple of hours

8    before that if there are any late-breaking issues that

9    need the Court's attention.

10                    With that, Counsel, we stand in recess,

11   and you're excused until Monday.

12                    MR. ZAGER:  Thank you, Your Honor.

13                    COURT SECURITY OFFICER:  All rise.

14                    (Court adjourned.)

15                    * * * * * * * * * * * * * * * * * * * * *

16

17

18

19

20

21

22

23

24

25

1

2                            CERTIFICATION

3

4          I HEREBY CERTIFY that the foregoing is a

5    true and correct transcript from the stenographic notes

6    of the proceedings in the above-entitled matter to the

7    best of my ability.

8

9

10

11   /s/_____              _____
     SHELLY HOLMES, CSR                        Date
12   Official Court Reporter
     State of Texas No.:  7804
13   Expiration Date  12/31/14

14

15   /s/_____            _____
     SUSAN SIMMONS, CSR                   Date
16   Official Court Reporter
     State of Texas No.:  267
17   Expiration Date  12/31/14

18

19

20

21

22

23

24

25